Case No. 18-7123 United States of America ex rel. Kasowitz Benson v. LLP Kasowitz Benson v. LLP Appellant v. BASF Corporation et al. Mr. Davenport for the Appellant Mr. Garr for the Appellant Good morning, your honors. May it please the court, I would like to reserve three minutes for rebuttal. The district court here made a clear error when it ruled that the Toxic Substances Control Act or TSCA does not impose an obligation for a company, a regulated company to submit what's called substantial risk information to the EPA unless and until the EPA has first said that it should have been submitted. That ruling directly contradicts the language of the statute which requires that a regulated company that obtains substantial risk information must immediately inform the EPA of that information and that did not happen here. So nothing in the language or the case law suggests in any way that that transmission obligation is contingent in any way and the ruling that it is undermines the purpose of the Toxic Substances Control Act which is to provide the EPA with the information necessary to protect the public and it also undermines the enforcement the EPA would be unable to impose a penalty for a period of time that predated this determination that the information should have been submitted. In other words, the concealment period from the defendant would be that that obligation is contingent. That ruling appears to proceed from another incorrect premise. That premise appears to be from reading the court's opinion that the EPA has exclusive authority to make this information that the defendants have compiled is or is not substantial risk information that should be reported. That is also directly contrary to the Toxic Substances Control Act which provides an expansive role for private citizens, not EPA obviously. But Mr. Davenport, it doesn't provide for a damages remedy for individuals and one would think that if Congress wanted the level of enforcement that your position implies that it at least would have done that and it hasn't. Well, it did, Your Honor. The Citizens Action Provision 2619 does provide for injunctive relief under a private citizen's action for injunctive relief. It then says in 2619C3 that nothing in this section will restrict the right of the private citizen to seek enforcement of this statute under any statute or even under the common law for any other relief there has to refer to relief outside of injunctive relief which is already available under the Toxic Substances Control Act. So this authorization for the private citizen to seek relief under these other statutes would have reference, for example, to the False Claims Act and the False Claims Act also provides arising out of the toxic substance? I'm sorry? Or perhaps to a personal injury claim arising out of the toxic substance? Well, I'm not sure how that would fit under enforcing TSCA but perhaps certainly the grant there from Congress is statute or the common law and for any other relief. But certainly we believe it has application to the False Claims Act which expressly contemplates that TTAM actions will include regulatory matters that are before agencies because the False Claims Act gives the government in a TTAM case, obviously this is a private citizen that has brought this False Claims Act and the government then has an election. The government can elect whether to pursue the TTAM claim through an administrative civil penalty proceeding and that's under 31 U.S.C. section 3730E5. That of course presumes that the TTAM claim could address regulatory matters that the government might want to pursue in this administrative proceeding. The SCA also prohibits TTAM relators from bringing a TTAM case if the matter is already the subject of a penalty proceeding to which the government is already a party and that's the same statute, section 3730E3. So again, the contemplation here is that regulatory matters may well be addressed but the government then has an option to pursue them in an So for you to get home on this theory, you have to be able to show that the language of the False Claims Act works for you, right? And the language of the False Claims Act speaks in terms of an obligation to transmit property to the government? Yes, it does, Your Honor. And how is it that there's an obligation to transmit property to the government? The theory you're talking about is the information, right? The information, the substantial risk information itself is property and the statute, the Toxic Substances Control Act actually makes that very clear. In section 2613, 15 U.S.C. 2613, that deals with confidential business information. So Congress anticipated that much of the information that's going to have to be reported, submitted under the Toxic Substances Control Act, would be proprietary confidential business information. It might be confidential information but I guess what seems to me to be the challenge for you is does the statute impose an obligation to transfer the property to the government? Because it does, under your theory, it does give an obligation to give the government the information so that the government can do something with the information, presumably respond to it in a way that deals with the safety issue. But I'm not sure that the information becomes property that the government can then do with it what it wants in the way that you normally understand it. If you had an obligation to turn over a piece of real estate to the government, then the government takes the piece of real estate and then it can do what it wants with it. It can build on it, it can sell it, but it just doesn't seem like that's what's going on with the substantial risk information. Well, there's two, first of all, there's two provisions that we're dealing with here. First is the Reverse False Claims Act, or Reverse False Claims Provision, which requires, you know, an obligation to transmit property to the government. The other is the Conversion Provision, which prohibits a company that's in possession of information that is used or to be used by the government from failing to deliver all of that information. Now, used or to be used necessarily connotes an interest in that property that is something less than outright ownership. It's simply, we don't read either of these provisions, the transmission obligation or the delivery obligation, to require the delivery of outright ownership of the property to the government. It's merely an interest in the property here to use under the delivery statute. But why isn't the Supreme Court's analysis in the Cleveland case really instructive here, where that was the case about licensing gambling machines? And to be sure, in the hands of the business, it was property, but the government's interest was a regulatory interest, and it seems that that's really precisely parallel. At least the defendants here argue that that's precisely parallel to the government's interest in the toxic substances. It's not an ownership interest in the information, but a regulatory one. And I understand the question, Your Honor. The Cleveland case of the mail-and-wire fraud statutes, the Supreme Court has found in those cases that the mail-and-wire fraud statutes protect only an economic interest in property. And there's been rulings to that effect. Congress has amended it a little bit to add some non-economic injuries into what can be dealt with there. But the FCA has clearly been ruled, is well established, that the FCA protects not only the government's economic interest, but also its regulatory and police interests. The Enright Commonwealth Companies case, this is an Eighth Circuit case, 913 Federal 2nd at 518, this was a bankruptcy case. The government, as it does from time to time, sought to relieve from the bankruptcy stay, automatic stay, to pursue a False Claims Act action against the debtor in that case. The debtor said, well, no, this is an economic injury, no relief from the stay. The government argued, and the Eighth Circuit agreed, that the police and regulatory interests, and I'm quoting now, by enforcement of the FCA are undeniably legitimate and substantial, and therefore the case, the stay did not apply because those interests were substantial. That case has been cited in this district, not on the Court of Appeals, but in district courts, as being well settled authority. Finally, the Barani case from the Tenth Circuit that we cited in our briefs lays out the congressional, the Senate report for the 1986 FCA amendments that gave us the reverse false claim provision. And there the Senate Judiciary Committee said the cost of fraud cannot always be measured in dollars and cents, however, and that the GAO had pointed out that fraud, quote, in the government's ability to efficiently and effectively manage its program. And that's why this court has ruled, and many other courts have ruled, that there is no requirement that the government actually suffer an economic loss for an FCA claim to life. But the statute does refer to property or money, the control of property or money. And the question is, assuming that you're right, that there's a mandatory obligation without any enforcement or assessment on the part of the government to turn over the information, you're still not all the way home, right, because there has to be some monetary or property involved that the government is being deprived of. Well, the property is the information. The government, the... No, we have to agree with you on that. You don't have a theory. If we think that the government is not seeking, is not being deprived of a property interest in the information, then that's fatal to your theory. Well, I don't think so, because I don't think that the conversion provision requires only that what the government be deprived of is the use or the ability to use the information. The TSCA requires the EPA to use the information to protect the public health. No, but the statute speaks in terms of use of property. And so, and if you just think about it in terms of conversion, everybody calls it the conversion provision. Just as a general matter of the way, at least I think about conversion, is it's converting somebody, something that somebody else is into something that you're going to use, which, and if you combine conversion with property, makes it seem like what's going on, and I can understand why the False Claims Act would be concerned with this, is if there's property that's the government's, and then somebody is converting it to their own use, then that's a problem. But that requires presupposing that the substantial risk information is, in fact, property of the government's that then is being converted to the use of somebody who shouldn't be using it that way. Well, in the Supreme Court's decision in Ruggles House, which we cited, the Supreme Court said that the government, absent the kind of confidential business information protections and allocations that we cited in the brief, Section 2613, which gives the government the right to disclose the confidential health and safety information, absent that, the disclosure, the government's disclosure of that information would represent a taking of that property. So it's property in the hands of the regulated company. Then the Toxic Substances Control Act, Section 2613, says, so before they transmit it, the defendants have absolute control over whether that information is disclosed to the government, or to the public. Afterwards, the government has control of that for all practical purposes. The defendants say, yes, we could, but they will not, for all practical purposes. The ability to disclose information is the key proprietary interest in anything that's called confidential business information. Otherwise, it loses its proprietary value. I see my time has gone. I was hoping to reserve some, but I'll be glad to answer any questions. I'm here as long as you need. We'll give you some time, Mr. Kelly. Thank you. Mr. Geller? Thank you, Judge Henderson, and may it please the Court. The plaintiff's theory of liability under the False Claims Act would turn virtually any regulatory reporting violation into a claim for trouble damages under the False Claim Act, and in the process, wipe out the administrative discretion that has always existed to determine whether or not to assess any penalty for an alleged misreporting in the first place. Would it really have the grave consequences that you point to insofar as any time that the government wants to intervene and take over the case, it can do that? It certainly could do that, Your Honor. Here, I declined to intervene and submitted a statement of interest in our favor, but the resources of the government, at least to date, have not been such that it has to so carefully oversee every single False Claims Act case, and that really would present an extraordinary burden for the federal government. The federal government has made clear that it does not support the far-reaching theory of liability in this case. One of the reasons for that may well be that it recognizes the impact on its scarce resources that that would impose. I'm sorry, Your Honor. And I think it would be the case that there are two theories here that they've advanced. One, the remarkable theory that information is actually property, not just property, but property that belongs to the government, and two, the theory that an unassessed violation under TSCA actually creates a duty to pay for purposes of the False Claims Act. Now, starting with the property theory, I think Judge Chernivasa is exactly right in terms of how to think about that theory. There's nothing about TSCA that creates a property interest in substantial risk information. Its reporting statute requires manufacturers to inform the government of substantial risk information where it exists. It doesn't require anyone to give, transfer, deliver any property interest to the government, and it certainly doesn't convert substantial risk information into the government's property. If it did, I think we'd be here talking about potential takings violations. But the way to avoid that... And your opponent referred to the Ruckelsass case, which did deal precisely with takings, and did recognize that where the business was not told, look, when you turn this over to the government, it's in our hands to disclose, there might be a takings problem. Sure. So even if it's not the government's... Even if the government doesn't want to use it as property, the government's ability to disclose information that your clients consider to be property implicates property rights, let's say. Well, let me answer it this way. First, I think in order for the theory to proceed under the Reverse False Claims Act or the conversion provision,  So even if you start with the premise that there is a property interest in substantial risk information, when it goes into the government's hand, the government is not taking it as its property. Its use of the property, as you indicated, Your Honor, is purely regulatory, in the sense that the Supreme Court in the Cleveland case made clear is not exercising a property interest over it. Now, with respect to the substantial risk information in the first place, you certainly could theorize situations where there's data that has substantial value to manufacturers, competitive advantage having that, that would have elements of property interests under the Ruckelshaus decision. But there's nothing in TSCA that requires the manufacturers to actually turn over that data, which might be in a report, for example. All that TSCA requires is for the manufacturers to inform the government of substantial risk information. You can do that in any number of different ways. Manufacturers never, as a practical matter, submit the actual studies, full studies, reports, in complying with TSCA and submitting substantial risk information. This is a reporting statute. It's not a property conveyance statute. So there's nothing inconsistent with the generalized notion that we can think about data or formulas or anything else that might be confidential, have economic value, and could have elements of property under Ruckelshaus, but yet reach the conclusion that TSCA doesn't require the conveyance of any property interests. And it certainly... So on the two statutes that are at issue, so it seems more self-evident under the reverse, what's it called? Reverse false claim provision. Because that speaks in terms of an obligation and then a transmission to the government. And then the conversion one at least stops a little bit short of that. So the first part of the conversion statute speaks in terms of whether the entity has possession or control of property. And I guess one could reach the conclusion that there's possession or control of the property when it's information that it's in the hands of, for example, your clients. I'd imagine that your clients would consider that to be property that the clients have. And then the question would be, and maybe you'll resist that, and then the question will be whether there's a conversion. Because for there to be a conversion, it seems like, then it would have to be some kind of property interest that the government presumably would have had, but then it's been converted into the entity's own use. Right. And so would you agree that the first part of that actually can apply, that the entity has possession, custody, or control over property, i.e. the information? Certainly not here, Your Honor. I mean, just to look at the allegations here with respect to the alleged substantial risk information, nine of the ten pieces of information involved. Right, okay, so if you put a slide public, so is that where you're going? So here, having alleged the elements of property, you could imagine situations where manufacturers have confidential information that they would view as having property interests. Even then, I don't think the premise would be correct, because TSCA doesn't actually require them to turn anything that would be a property interest over to government. I mean, that goes to your point that you don't have to turn over the reports, actually. Exactly, it's an information statute, a reporting statute. So just drill down just a little bit more concretely. So if there is some synthesized chemical that is a proprietary chemical belonging to one of your clients, and are you saying that there will typically be a way to report that will not disclose the... You certainly could convey the... I'm sorry, Your Honor. That will not disclose the proprietary information, but that will meet the TSCA requirement. Right, I mean, you certainly could convey the substantial risk created by a chemical without disclosing the actual proprietary formula. And TSCA also has provisions which protects confidentiality, which my friend recognized earlier this morning. But those actually underscore that TSCA doesn't require the conveyance of property interests and doesn't remotely give the government any property interest in this information, which would be necessary to have a conversion. And I think you're exactly right, Judge Srinivasan, that when we think about conversion, we talk about taking property owned by one and converting it to the property of another. And the Senate report for the 2009 amendments to the False Claims Act actually talks about the provisions, conversion provision, of the False Claims Act provision applying to the government's property. The False Claims Act, after all, is designed to protect those against defrauding the government. And here, there's absolutely no question that no matter what one might think about the substantial risk information in the abstract, TSCA doesn't grant the government a property interest. It doesn't require anyone to transfer that property to the government. And it's simply not the government's property, which is a necessary element of proceeding under either the false claims provision, reverse false claims provision, or the conversion provision. What's your position, Mr. Garr, on the district court's reasoning that there is no obligation under TSCA to report substantial risk information until the EPA assesses penalties? Sure. I'm not sure that's right, and I'd be curious to know. Right. So first of all, I think to be fair to the district court, her analysis was focused on the duty to pay argument, because that's the argument that was the focus of Plano's case in the district court. She gave less attention to the property-based arguments that are the focus of his submission here. But I think that explains why the analysis there is a little bit more cursory. Second of all, the district court was not holding that TSCA creates no obligation to convey substantial risk information. I think her analysis was focused on how the False Claims Act applies in this case. And all she was saying is that for purposes of the False Claims Act, there's no obligation to transmit anything until there's actually been a determination by the EPA that this is substantial risk information. That doesn't mean that there's no – Well, there is an obligation to transmit. It's just not the things that are material to the False Claims Act, i.e. money or property. Right, and I think, you know, Paige states the principle more clearly, where she says that because there's actually – until there's been a determination that this is substantial risk information, there couldn't possibly be any claim that the government has been deprived of any property belonging to it. Now, that was the focus of her analysis. But, of course, there are many other flaws with the property-based arguments that the plaintiff has advanced in this court, including the argument that TSCA doesn't require any manufacturer to transfer or deliver any property to the government, which is a sufficient basis to dispose of the property-based claim here. I don't think the district court was saying that there's no obligation under TSCA to submit substantial risk information. Everybody agrees that there's a duty to obey the law. She simply was focused on the False Claims Act element of this. And that sort of gets back to where I started, which is, you know, really, this is all an end run around the careful limits in TSCA on citizen suits provisions. As you recognized earlier, Judge Blard, TSCA carefully limits the claims that private citizens can base. It limits, first requires a citizen to give EPA notice before the case actually proceeds, and then it limits the relief to injunctions. And what they've done here is to attempt an end round around those limits in TSCA to seek a claim where EPA has never been given any opportunity to make that substantial risk information determination, as it would be required under TSCA citizen suit provision, and then to seek not just damages, but treble damages. There's no indication at all that Congress intended anything like that in the False Claims Act. No court has ever recognized such a far-reaching conception of the False Claims Act. In a citizen suit for injunctive relief, the citizen has to give EPA notice. But does EPA have a right then to control that case, or just to appear as amicus, or how would that protect? For example, one of the arguments that Kasowitz makes here is that courts, in response to injunctive suits, do make substantial risk information determinations without the agency first having done so. Certainly, but at the very least, EPA is given that opportunity first. Here too, though, under the False Claims Act also. Well, the government has notice of it, that's correct, but the False Claims Act isn't really designed to make the specific determinations that are called for under TSCA. And here, of course, they made a big deal out of the fact that this information wasn't disclosed earlier. We, of course, don't think it was required to be disclosed in the statute. EPA has known about these claims for almost five years at this point, and hasn't made any indication that they see any violation under the statute. The government itself has declined to intervene in this case and filed a brief in the district court, making clear that it doesn't accept or agree with Plaintiff's theory of liability under the False Claims Act either. Now, on the other issue, the duty to pay issue, we think that the Fifth Circuit's analysis in the Seminole case is exactly on point. We see no basis for this Court to be at odds with the Fifth Circuit on that. And it squares with this Court's own precedence in the Schneider case, as well as the Hoyt v. Red Cross case, that where there's been no assessed penalty, any obligation is simply contingent and potential and cannot create a duty to pay. The False Claims Act requires, in order for a reverse false claim, to show that there's been a violation of a duty to pay. And under the TSCA, there's absolutely no duty to pay under the statute until EPA is actually determined to assess a penalty. And the statute lays out a number of factors that EPA would go through in making that determination under 2615. We have to give notice, an opportunity for a hearing, have to consider various factors, and then the EPA can decide whether or not to modify or remit altogether any penalty. So the reason why the duty to pay claim fails, the District Court gave and the Fifth Circuit gave in the Seminole case, is that any alleged violation of TSCA results in only a possible or contingent or potential penalty. The statute refers to an obligation, meaning an established duty, and it lists duties arising from contracts, grantor-grantee relationships, licensor-licensee relationships, fee-based. And then from statute or regulation, what do you think that's referring to? Because it does seem like, as your brief points out and as you detail in footnote 10, listing other statutes, that even where statute or regulation calls for duty to pay, there is some regulatory mechanism for notice, for hearing. And so I'm just reading that text, wondering what you think that's referring to. Well, you can imagine different statute and regulations having different obligations with respect to penalties. And again, it's not an obligation generally. It's a duty to pay. So, for example, if you look at the customs laws, the customs laws actually say in 19 U.S.C. 1304i that the payments shall be levied, collected, and paid, and shall not be remitted. So that's an example that's sort of mandatory obligation, where there wouldn't have to be an actual assessment determination that a penalty would be appropriate. Taxes? Taxes would probably be analogous to that, Your Honor. But TSCA makes clear that simply finding a violation or even finding a liability generally doesn't compel the conclusion that a penalty would be imposed, that instead EPA has discretion to determine whether or not to actually impose a penalty, must exercise that discretion, and one of those considerations is whether or not to refrain from exacting the penalty altogether. That determination has not been made in this case. There's been no finding that a penalty actually should be assessed, and therefore there's no duty to pay under the False Claims Act. We would encourage the court to affirm the decision of the district court. Before you sit down, I have a question that doesn't pertain to this case, but is there a gap in 2607, this chemical that your clients manufacture and is used in polyurethane? Yes, Your Honor. And when they come up with a different use for it of polyurethane, it seems like this statute, if there's substantial risk information with a different risk, with a different use, that that would not be covered. I haven't carefully considered that question, Your Honor, so I'm reluctant to give you a yes or no answer, because my understanding would be that statutory obligation would be broader, that it would be substantial risk related to the chemical itself and not to, you know, Would the duty be on your clients or on the people who actually sell the polyurethane? I think it would be on those who know of the substantial risk, Your Honor, and that would entail those working with the companies that actually use it. But I must add, though, I haven't carefully studied that specific question. Thank you. Thank you, Your Honors. Does Mr. Davenport have any time? Okay, why don't you take two minutes? Your Honor, I wanted to thank you first for the time. Mr. Garr said that there's no requirement under the Toxic Substances Control Act to submit or transmit data. That's not correct. I would ask the Court to look at, as we've referenced in our brief, Exhibit 84 of the complaint is a significant transmission of an actual lengthy study report that's at Docket Entry 23-4 at 4 to Docket Entry 23-8 at 10. And I'd also encourage the Court to look at the defendant's formal comments to the EPA on the confidential business information regulations that the EPA proposed. That's at the appendix at 690 and 691 are the two pages. But the defendants made clear in those comments that they wanted, that they were going to have to submit health and safety studies, and that those studies would contain health and safety data that they wanted protected. They asked that the EPA not release those studies publicly, but instead allow what they call robust study summaries to be released instead. So that shows many things. Number one, that they do consider, that defendants do consider that information their property. And number two, that they acknowledge that the EPA now has the right, that they used to have the proprietary right to disclose that information as it sees fit over the objections of the defendants. The conversion, you asked about conversion, the conversion that occurs is that they are keeping the government from using and disclosing the information as the TSCA requires EPA to do. I see my time is gone. Thank you. Thank you.
judges: Henderson, Srinivasan, Pillard